### DUNN ET AL. VS. GRAHAM ET AL.

The answer of one defendant, is not evidence against his co-defendant, unless upon proof of such an absolute unity and identity of interest and design between the defendants as under the ordinary rules of law, will·make the acts or admissions of one, the acts or admissions of the other, &c.    *Blakeny vs. Ferguson et al.*, 14 *Ark. Rep.* 641.

*Quare:* When, and how far, is the answer of one defendant, when responsive to the bill, evidence in favor of his co-defendant?

When the answer of a defendant, in all material points, is responsive to the allegations in the bill and to the special interrogatories based thereon and propounded to him, it must be taken as true, unless disproved under the rule requiring two witnesses, or one with corroborating circumstances.

G., as assignee of W. & Co., obtained a judgment against V. and D. and others as his securities, on a note payable to W. & Co., or bearer. The securities file a bill against G., and V. alleging that V. had paid the note, and again put it in circulation, and interrogate G. as to his title to the note: G. answers that he bought the note of the agent of the payees, and that V. was his agent to make the purchase; the complainants prove by one witness, the agent of the payees, that V. paid him, and that he delivered the note to him: HELD, That the answer of G., as to his title to the note, must be taken as true, and that the evidence of the witness is not irreconcilable with the truth of the statements in the answer.

OF THE STATE OF ARKANSAS. 61

TERM, 1856.] Dunn et al. vs. Graham et al.

*Appeal from Calhoun Circuit Court in Chancery.*

Hon. JOHN C. MURRAY, Circuit Judge.

CUMMINS, for the appellant. There is no proof that Graham furnished Varn with any money, or appointed him his agent. The answer in this respect is not responsive; and, therefore, no evidence.

Varn's answer is no evidence for Graham, and if it were it could only be so, so far as responsive to the bill. 1 *Eng.* 317 ; *ib.* 79 ; 5 *Ark.* 9 ; 9 *Cow.* 37 ; 2 *Dana* 167 ; *Gres. Eq. Evidence* 24.

The evidence of Case, unexplained by other evidence, was conclusive. The denial could not be direct and positive. The only facts in the answer, which could overturn Case's statement, were not embraced in discovery asked, and here are to be rejected as not existing as facts. This leaves Case uncontradicted. *Gres. Eq. Ev.* 4.

CURRAN & GALLAGHER, for appellees. The bill alleged that Graham fraudulently purchased the note from Varn, and by collusion with him, and interrogatories to that point, were propounded to him; and, also, that he state in what manner he got possession of the note, if not from Varn. Graham answered the allegations and interrogatories fully, denying fraud and stating in what manner he became entitled to, and from whom he purchased the note. Had not the complainants a right to require an answer to such interrogatories? Assuredly they had; therefore, the answer of Graham was evidence in his favor, and required one witness and corroborating circumstances, equivalent to a second witness, to overturn the same. *Woodcock vs. Bennett*, 1 *Cow. Rep.* 743 ; *Closson vs. Morris*, 10 *John* 542 ; *Field vs. Holland*, 6 *Cranch* 24 ; *Ten Eyck vs. Hart*, reversing in this respect the decision of Chancellor KENT, A. D. 1817, not reported. See

*Emmet's Argument*, 1 *Cow.* 744, *et seq., Moupin vs. Whiting*, 1 *Call.* 224; *Snellgrove vs. Bailey*, 3 *Atk.* 214; *McCall vs. Blewett;* 2 *McCord Ch. Rep.* 102; *Bank vs. Block et al.*, 2 *McCord Ch. Rep.* 349 *; Semon vs. Cherry*, 1 *Bibb.* 253; *Pollard vs. Lymon*, 1 *Day* 156; *Ragsdale vs. Buford*, 3 *Hayne* 192.

Mr. Justice SCOTT delivered the opinion of the Court.

The complainants, Allen D., John and James S. Dunn, and David Daugherty, filed their bill in the Calhoun Circuit Court, against the defendants, Joseph M. Graham, John M. Varn, Elijah F. Strong and Wills, Pease & Co., alleging that Varn, having purchased a lot of merchandise at auction, from Leonard E. Case, as agent for Wills, Pease & Co., they, together with Strong, none of them having any interest in such purchase, as the mere securities of Varn, executed with Varn, a promissory note, on the 29th of May, 1849, payable on the first of January next following, to Wills, Pease & Co. or bearer, for the sum of $382 90, and delivered the same to Case as such agent.

That on or about the time the note matured, it was entirely discharged and paid off by Varn, who paid into the hands of said Case, the amount of the same, and received into his own hands, from the hands of Case, as agent, the note in question, as a full discharge of the debt for which it was given. That afterwards, the note was again put in circulation by means unknown, but which they charge to have been fraudulent. That eventually it came into the possession of defendant Graham, who pretended to have derived his title to the same from Wills, Pease & Co.; but complainants believed his only title was derived by a fraudulent contract with Varn, long after the before alleged payment of the same by Varn, and delivery of it to him by Case, as agent. But in either case, complainants charged that the title of Graham was fraudulent. That after the execution of the note, Varn became notoriously insolvent. That at the spring term of the Calhoun Circuit Court, A. D. 1852, the complainants together with Varn and Strong, were sued on the note in question by Graham as assignee of

Wills, Pease & Co., and none of them making any defence, he obtained a judgment. That two of the complainants, *to wit:* John Dunn and James S. Dunn, knew nothing of the alleged payment of the note, and its fraudulent re-circulation, until after the adjournment of that term of the court. But that the two others, *to wit:* Allen D. Dunn and David Daugherty, had heard something of it, but knew of no person by whom they could establish the facts, except Varn and Graham themselves, until the adjournment of said term. They also charge that when Graham came into the possession of the note, he well knew it had been paid and delivered up to Varn, and that the latter was notoriously insolvent. The bill then proceeds to propound numerous special interrogatories to Varn, among them, the following, *to wit:* whether he did not entirely discharge, pay-off and take up the note, as alleged? Whether he did not pay into the hands of Case, as agent, the entire amount of the note, and receive into his own hands the note from Case, in full discharge of the debt it was given to secure? Whether, afterwards, he did not again put the note in circulation? If not, by whom, or by what means, was it again put in circulation? Whether he did not trade the note to Graham, and if so, by what fraudulent intent? Was it to defraud Graham, or the complainants? If neither, then who? If nobody, then why did he again put it in circulation after its payment and discharge as aforesaid? Whether the contract, between him and Graham, was not fraudulent, so far as Graham was concerned? Whether Graham was aware that the note had been paid before it came into his possession, and whether he was not fully aware that Varn was, at that time, insolvent? Whether or not he, Varn, is insolvent? If so, when did he become so?

Varn after responding to various allegations and interrogatories, proceeds upon oath to answer, in reference to the interrogatories above copied, as follows, *to wit:* "This respondent further answering, says, that it is not true that this respondent ever paid off and discharged said note, when the same became due, or at

any time, or that this respondent ever put the said note in circulation, after having paid off and discharged the same, as is by said complainant alleged. This respondent, however, admits, that at the time the said note became due, he did pay into the hands of said Leonard E. Case, the amount of the principal of said note, there being, at that time, no interest due thereon. And that this respondent did receive the said note from the said Leonard E., the agent of the said Wills, Pease & Co., but this respondent most positively affirms, that the money he paid to the said Leonard E. for the purchase of said note, was the money of, and belonging to the said Joseph M. Graham ; that this respondent acted in the whole matter and transaction, as the agent of the said Joseph M. Graham ; that the said Joseph M., having supplied this respondent with the money necessary to purchase said note as his agent ; that this respondent did so purchase said note, and did so receive the same as the agent of the said Joseph M. Graham, and that this respondent did, immediately upon receiving said note, deliver the same to his principal, the said Joseph M. Graham, and this respondent affirms positively that he never did put said note into circulation, except when he first delivered the same to the said Leonard E., in payment of his debt to the said Wills, Pease & Co. ; and that this respondent never had said note in his possession, except as the agent of the said Joseph M. Graham ; and this respondent affirms that said note, to the best of his knowledge, hearsay, information and belief, never has been out of circulation at all, from the time the same was executed until the same was sued upon by the said Joseph M. Graham, who is the *bona fide* purchaser of the same, from the said Wills, Pease & Co. This respondent further emphatically denies that he ever traded said note to the said Joseph M. in any manner whatsoever. And this respondent, further answering, says, that the charge of fraud in said complainant's bill contained against him, is absolutely false and untrue. This respondent never attempted to defraud the said complainants, or the said Joseph M., or either, in any manner whatsoever. That he never put said note

in circulation, except when he delivered the same, as above stated, to the said Leonard E. Case. And this respondent most positively affirms, that he never was, for one moment in his life, the owner, or the part owner of the said note, or that he has ever paid one cent on the same to any person in the world, although, as he has above stated, he did as agent of the said Joseph M. Graham, pay the amount of the note to the said Leonard E., but that was done solely for the use and benefit of the said Joseph M., and with the money of the said Joseph M., to enable the latter to become the *bona fide* purchaser, and legal holder of said note. This respondent further most positively affirms it to be false, that he was insolvent at the time of the purchase of said note by the said Joseph M., or for some time thereafter, as is by said complainants alleged. He admits himself now insolvent, but he did not become so until about eighteen months after the note was lifted by the said Joseph M. from the said Leonard E."

Various special interrogatories are then propounded to the defendant, Graham. By what title does he hold the note? Whether he holds it as *bona fide* assignee of Wills, Pease & Co., or by a purchase from Varn? If by the former, by what member of the firm was it assigned and delivered, and what was the consideration given for it? If by the latter, at what time, and under what circumstances, was the purchase made? Whether he was aware at the time of the purchase, that the note had been paid? To which he makes sworn responses, as follows, *to wit:* "That he is the *bona fide* assignee and holder of said promissory note. That he purchased the same, for a valuable consideration, from L. E. Case, the agent of Wills, Pease & Co., some time in the latter part of the year 1849, *to wit:* about the 25th of December, for the sum of the principal due thereon, *to wit:* $382 90. That a short time after he had arrived in this State, having money on hand yielding him no profit, and having been informed of the existence of the note in question, and that it would bear interest at the rate of ten per centum per annum, from maturity, and that the makers were perfectly solvent, he determined to

purchase the same as an investment. The note, at that time, being in the possession of L. E. Case, as agent of Wills, Pease & Co., and at Camden, in Ouachita county, and being unable to go there at that time himself, and John M. Varn being about to visit that place, he requested Varn to purchase said note as his agent, and he consenting to do so, respondent furnished him with the sum of money, *to wit:* $382 90 for that purpose. Thereupon Varn, as the agent of respondent, purchased the note, with the money of respondent, furnished him for that purpose as aforesaid, from L. E. Case, as agent of Wills, Pease & Co., and received the same, and immediately on his return from Camden, delivered the note to respondent, who thus became, by mere delivery of the said Leonard E., as agent of Wills, Pease & Co., to Varn as agent for respondent, the promissary note being payable to Wills, Pease & Co., or bearer, for the consideration aforesaid, the *bona fide* and legal holder of the same, for full value. That he had never heard that the said note ever had been paid, except in the manner just stated by respondent; neither does he believe that it ever was; on the contrary, he expressly avers the truth to be, that it never has been paid in any manner." From information and belief, he avers that complainants knew, at the time he purchased the note, that respondent employed Varn, as his agent, to make the purchase. Avers that the charge of fraud contained in the bill, against respondent, is absolutely and entirely false and untrue. That Varn, at the time the respondent purchased the note, and for the space of more than a year afterwards, was generally considered perfectly solvent. That respondent loaned Varn $150, at the time the note was purchased; and denying that Varn ever paid said note, otherwise than as stated, he prays his answer may be taken as a demurrer; that plaintiff's are not under their bill, entitled either te discovery or relief : their remedy at law being ample and complete.

Besides these answers, there is no evidence in the record, other than a statement of L. E. Case, which seems to have been filed by the complainants, "and by consent made a part of the testi-

mony in the cause," as is stated in the record. That statement is as follows, *to wit:* "In the spring of the year 1849, the firm of Wills, Pease & Co., of New Orleans, placed in the hands of myself and partner, a claim for about $5000, against Smith & Thorn, of Camden, for collection. In liquidation of this claim, Messrs. S. & T. handed over to us their stock of goods, to be sold by us *at auction,* and the proceeds to be applied *to their claim.* The auction was advertised for the 28th of May for that year, and the goods were sold on a credit until the first of January, 1850, the purchaser giving note with security. At the sale John M. Varn bid off goods to the amount of $382 90, for which he gave his note, due 1st January, 1850, with Elijah Strong, A. D. Dunn, and perhaps some one or two more names, as security. On the day the note fell due, Mr. Varn called at our office and paid, and took up the note. We allowed him a credit of $8 90, as he said that certain goods, amounting to that sum, which he had bid off at the sale, and which were included in the note, were not delivered. I know nothing further with regard to the note.

L. E. CASE."

To Graham's answer a general replication was filed, but it does not appear that any was filed to the answer of Varn. The bill prayed relief against all the defendants by injunction, and also general relief. The cause having been previously set down for hearing, was heard and determined at the spring term, 1854, upon the bill and exhibit, upon these two separate answers, and the statement of L. E. Case read as evidence by consent. The decree was, that as to all the sum theretofore enjoined, except $8 90, the injunction should be dissolved, and as to the latter sum, it should be perpetuated. The complainants appealed to this court.

It will be seen, that the answer of Varn was sworn to, and that irrespective of the rule, that the answer will be taken as true, whether responsive or not, when no replication has been put in; his was actually responsive; and, therefore, must be taken as true against the complainants, for that reason also. It will also be seen, that it went to the complete destruction of the foundation,

68     CASES IN THE SUPREME COURT

Dunn et al. vs. Graham et al.     [JANUARY

upon which the complainants built their case, for relief against each and all of defendants.

It is perfectly clear, that had Varn'sanswer been the opposite of of what it was, it could never have been read by the complainants *against* Graham, unless, in connection with other testimony establishing—not a community of interest merely, like that of tenants in common—but such an absolute unity and identity of interest and design between Graham and Varn, by means of the fraud charged against them in the bill, as under the ordinary rules of law, would have made the acts or admissions of either the acts or admissions the other—like the acts or admissions of co-partners, or joint tenants, having a complete unity of title and interest, or of co-conspirators identified in a common design. And this, because of the established rule, no longer open to question, that the answer of one defendant cannot be read in evidence against his co-defendant, unless he refers to such answer as correct, or is so combined and identified with the answering defendant, as to be bound, under the ordinary rules of law, by his confessions, declarations, and admissions. *Blakeny vs. Ferguson et al.,* 14 *Ark.* 641, and cases there cited.

But although that proposition is perfectly clear, is it equally clear, that Graham could not, nevertheless, insist that that answer should enure to his benefit by way of a legitimate operation, *against the complainants ?*

The adjudged cases, favoring the affirmative of the proposition, so far as they have come under our observation, do not go the length of holding that in every case, where the responsive answer of the responding defendant goes to destroy the foundation of the case made in the bill, it shall enure to the benefit of the co-defendant, by operating as evidence against the complainant in the whole case; but the reasoning, upon which these adjudged cases are based, and by which they are supported, does seem to go that far. They are, so far as we have seen cases, where the defendant, protected in this wise, was either *claiming under* the responding defendant, as in the case of *Field et al. vs. Hol-*

*land et al.,* 6 *Cranch Rep.* 8–24 ; and see, also, Judge BALDWIN's exposition of that case in *Pettit vs. Jennings,* 2 *Robinson's* ( *Va. Rep.* 581) ; or elsewhere he occupied the attitude of a *stake-holder* for the complainant and his co-defendant, as in the case of *Mills vs. Gore,* 20 *Pick. Rep.* 35. See, also, *Greenl. Ev., vol.* 3, *sec.* 283, *p.* 269.

The reasoning, in support of the ruling in both of these classes of cases, is to the effect, that the complainant, having called upon the responding defendant for discovery, as to the whole case made in his bill, has thereby made him a credible witness against himself, as to his whole case ; having interrogated him only as he desired ; upon allegations framed in the manner most favorable to his own interest, and obtained the discovery sought, by searching and leading questions, the response has been obtained under the most favorable auspices for the complainant ; and that the response, thus obtained, is not, as against the complainant, obnoxious to the objection for want of cross-examination, as it would be, if allowed to be used against a co-defendant. Hence, it was supposed not unfair to hold in these cases, that it should not lay in the mouth of the complainant—when the response thus obtained went to destroy the foundation of the case made in his bill, to say it was not evidence *against* himself on the *whole case* made by his bill ; in imperfect analogy to the rule, which holds a party to the answer of his own witness, who unexpectedly, testifies the very opposite of what he anticipated.

The argument to the contrary is, that the answer to a petition for discovery, stands as a deposition, and is not evidence, for any purpose, until read by the party obtaining it, who may read it, or not, at his election. *Conway & Reyburn vs. Turner & Woodruff,* 3 *Eng. Rep.* 362, and cases there cited. But conceding this to be so, do the reasons, which sustain the rule, apply with full force, when the bill is not only for discovery, but also for relief consequent thereon ; and that, too, in some one aspect of the bill, against all the defendants therein ?

But it is not necessary for us to determine any point as to Varn's

answer, nor has any been mooted by counsel; because, waiving any question as to that, and also any question of jurisdiction, as we do, the decree of the court below is well enough sustained on the merits, without any reference to Varn's answer.

In the light of the case of *Wheat et al. vs. Moss et al.*, 16 *Ark. Rep.*—(decided at the last term) the answer of Graham, in all material points, is responsive to the allegations in the bill, and to the special interrogatories based thereon, and propounded to him; and must, therefore, be taken as true, until overbalanced under the established rule. And so far from this having been done in this instance, the evidence of the only witness, produced on the other side, is, by no means, irreconcilable with the truth of the statements contained in Graham's answer. Hence, all that is stated by the witness may be true, as it doubtless is; and nevertheless, Graham has stated the truth also, in his answer.

Finding no error in the record, for which the decree should be reversed, it will be affirmed with costs.